JENNIFER L. WAIER
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
JASON C. PANG (Cal. Bar No. 296043)
NISHA CHANDRAN (Cal. Bar No. 325345)
DAVID C. LACHMAN (Cal. Bar No. 261711)
Assistant United States Attorneys
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2652/2429/5564
     Facsimile: (213) 894-0141
     E-mail:    Jason.Pang@usdoj.gov
                Nisha.Chandran@usdoj.gov
                David.Lachman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:24-cr-569(A)-MEMF |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE: FOR JUDICIAL NOTICE OF PUBLIC DOCUMENTS; TO ADMIT EVIDENCE OF OTHER ACTS, CRIMES, AND WRONGS; AND TO ADMIT EVIDENCE OF DEFENDANT PAUL BILZERIAN'S PRIOR CONVICTIONS IF HE TESTIFIES AT TRIAL |
| v. | |
| PAUL A. BILZERIAN, SCOTT ROHLEDER, and IGNITE INTERNATIONAL BRANDS, LTD., | |
| Defendants. | Hearing Date: January 5, 2026<br>Location:    Courtroom of the Hon Maame Ewusi-Mensah Frimpong |

     Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Jason C. Pang, Nisha Chandran, and David C. Lachman, hereby files its motion in limine for judicial notice of public documents; to admit evidence of other acts, crimes, and wrongs, and to admit evidence of defendant Paul Bilzerian's prior convictions if he testifies at trial.

Counsel for defendants Ignite International Brands, Ltd. and Scott Rohleder have indicated that they will oppose this motion.

This motion in limine is based upon the attached memorandum of points and authorities, Exhibits A-O, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 24, 2025          Respectfully submitted,

                                  JENNIFER L. WAIER
                                  Attorney for the United States
                                  Acting Under Authority Conferred by
                                  28 U.S.C. § 515

                                  ALEXANDER B. SCHWAB
                                  Assistant United States Attorney
                                  Acting Chief, Criminal Division


                                  _____/s/_____
                                  JASON C. PANG
                                  NISHA CHANDRAN
                                  DAVID C. LACHMAN
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

**Contents**

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS............................................3

      A.    Defendant Bilzerian Is a Convicted Felon................3

      B.    Defendant Bilzerian Is Subject to a $62 Million
            Disgorgement Order......................................4

      C.    Defendants' Fraudulent Schemes..........................5

III.  ARGUMENT......................................................6

      A.    The Court Should Take Judicial Notice of Facts From
            Publicly Available Documents............................6

            1.    Defendant Ignite's Public Filings with SEC and
                  CSA...............................................7

            2.    The Federal District Court's Orders and Findings.....8

            3.    Defendant Bilzerian's Admissions...................10

      B.    404b.........................................................11

            1.    Legal Standard....................................11

            2.    $1 Million Loan to Michael Feder..................13

            3.    42 Bio Investment.................................15

            4.    EVCD/MMS Wholesale, LLC Joint Venture.............17

            5.    Al Khalifa Group, dba MK Vape Joint Venture.........19

            6.    Exxel Outdoors, LLC...............................21

      C.    609..........................................................22

      D.    Depending on the Content of Defendant Bilzerian's
            Testimony, His Prior Convictions May Be Admissible to
            Impeach by Contradiction Under Rule 607.................24

IV.   CONCLUSION...................................................25

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE


15 U.S.C. § 78j(b)...............................................3

18 U.S.C. §§ 1001 and 371.......................................3

Bilzerian v. SEC, Case No. 20-7046 (U.S. 2021)..................5

Fed. R. Evid. 801(d)(2)(d) and (e).............................10

Federal Rule of Evidence 404(b).................................3

Federal Rules of Evidence 609...................................3

Huddleston v. United States, 485 U.S. 681 (1988)...............13

In re Silicon Graphics, Inc. Sec. Litig., 970 F. Supp. 746, 758
        (N.D. Cal. 1997)........................................7

In re Wet Seal, Inc. Securities, 518 F. Supp. 2d 1148, 1158
        (C.D. Cal. 2007)........................................7

Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049,
        1064 n.7 (9th Cir. 2008)................................7

Northstar Fin. Advisors Inc. v. Schwab Invs., 779 F.3d 1036,
        1043 (9th Cir. 2015) (noting that judicial notice of SEC
        filings was proper even if the filer was "aggrieved by
        their use" because the filer "created and filed them").........7

Reyn's Pasta Bella, LLC v. VISA USA, Inc., 442 F.3d 741, 746 n.6
        (9th Cir. 2006).........................................8

SEC v. Bilzerian, 29 F.3d 689, 691 (D.C. Cir. 1994).............4

SEC v. Bilzerian, 814 F. Supp. 116, 117 (D.D.C. 1993)..........8

SEC v. Bilzerian, No. CIV.A. 89-1854, 1993 WL 542584, at *1
        (D.D.C. June 25, 1993)..................................8

SEC v. Loving Spirit Found. Inc., 392 F.3d 486, 488 (D.C. Cir.
        2004)...................................................9

United States ex rel. Hong v. Newport Sensors, Inc, 728 F. App'x
        660, 661 (9th Cir. 2018)................................6

United States v. Alexander, 48 F.3d 1477, 1489 (9th Cir. 1995).....24

United States v. Antonakeas......................................25

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Beckman, 298 F.3d 788, 794 (9th Cir. 2002)........13

United States v. Bettencourt, 614 F.2d 214, 217 n.7 (9th Cir. 1980)..............................................................23

United States v. Bilzerian, 926 F.2d 1285, 1289 (2d Cir. 1991)......4

United States v. Bilzerian, CR 88-00962-RJW.........................3

United States v. Bilzerian, No. 88 CR. 962 (RJW), 1992 WL 301390....4

United States v. Boulware, 384 F.3d 794, 807 (9th Cir. 2004).......10

United States v. Castillo, 181 F.3d 1129, 1132 (9th Cir. 1999).....25

United States v. Daly, 974 F.2d 1215, 1217 (9th Cir. 1992).........12

United States v. Diggs, 649 F.2d 731 (9th Cir. 1981), overruled on other grounds by United States v. McConney, 782 F.2d 1195 (9th Cir. 1984)........................................13

United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012)........11

United States v. Ford, 632 F.2d 1354, 1375 (9th Cir. 1980).........13

United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1991)............23

United States v. Hanson, 936 F.3d 876, 882 (9th Cir. 2019)........12

United States v. Herrera, No. CR 15-315 JGB, 2016 WL 11637163, at *12 (C.D. Cal. Aug. 4, 2016)...............................24

United States v. Loftis, 843 F.3d 1173, 1176 (9th Cir. 2016).......11

United States v. Lopez, 4 F.4th 706, 731 (9th Cir. 2021)............6

United States v. Major, 676 F.3d 803, 808 (9th Cir. 2012).........12

United States v. Martinez-Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004)........................................................23

United States v. Okafor, 2024 WL 4263928, at *12 (D.D.C. Sept. 23, 2024)........................................................24

United States v. Parker, 549 F.2d 1217, 1222 (9th Cir. 1977).......13

United States v. Perry, 857 F.2d 1346, 1351-52 (9th Cir. 1988)......9

United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir. 1992)............................................................12

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                           PAGE

United States v. Romero, 282 F.3d 683, 688 n.1 (9th Cir. 2002).....13

United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir. 1990).....13

United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980)..........8

Worldwide Subsidy Grp., LLC v. Fed'n Int'l de Football Ass'n,
    771 F. App'x 767, 768 (9th Cir. 2019)........................23

Zinman v. Black & Decker (U.S.), Inc., 983 F.2d 431, 434 (2d
    Cir. 1993)...................................................24

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Former corporate raider and convicted fraudster Paul Bilzerian ("Bilzerian") owes the Securities and Exchange Commission ("SEC") more than $180 million ("SEC Judgment").  To dodge this judgment, defendant Bilzerian has renounced his U.S. citizenship, relocated to St. Kitts, and claimed poverty in connection with ongoing SEC proceedings.  To defraud the United States with respect to this judgment, defendant Bilzerian conspired with defendants Scott Rohleder ("Rohleder") and Ignite International Brands, Ltd. ("Ignite") to conceal his assets, financial interest in, and control over defendant Ignite, a "lifestyle" company putatively run by defendant Bilzerian's internet influencer son.  The three defendants also perpetrated a securities and wire fraud scheme with respect to defendant Ignite's earnings announcements in 2021: namely, to inflate the appearance of defendant Ignite's success, defendants conspired to backdate documents to claim revenues for 2020 for the sale of vape pens to a shell company, International Investments Ltd. ("International Investments"), controlled by defendant Bilzerian.[1] Relevant to this motion, defendants were charged with conspiracy to defraud the United States, conspiracy to commit wire fraud and fraud in connection with the purchase and sale of securities, wire fraud, and securities fraud.

<u>First</u>, the government moves for judicial notice of the following information from federal court dockets and other government agencies: (a) defendant Ignite's public filings with the SEC and Canadian

---

[1] Defendant Rohleder is charged with tax offenses that are not the subject of this motion.

Securities Administrators ("CSA"); (b) defendant Bilzerian's filings in the underlying SEC civil case in the District of Columbia and the United States Supreme Court; (c) orders by the federal district court for the District of Columbia issuing the SEC Judgment against defendant Bilzerian; (d) orders by the federal district court for the District of Columbia finding that defendant Bilzerian has shielded his assets and avoided compliance with the Court's orders to avoid the SEC Judgment; (e) an order by the federal district court for the District of Columbia imprisoning defendant Bilzerian due to his failure to comply with the Court's accounting order related to the SEC Judgment; and (f) orders prohibiting defendant Bilzerian from filing any complaint, proceeding, or motions in any court without prior permission.[2]

Second, the government moves to admit at trial evidence that defendants engaged in additional criminal conduct, wrongs, and other acts, which were not specifically identified in the First Superseding Indictment, including evidence establishing the following acts: (a) defendant Bilzerian's $1 million loan to Michael Feder, facilitated by defendant Rohleder; (b) defendant Bilzerian's investment in 42 Bio, facilitated by defendant Rohleder; (c) defendant Bilzerian's covert control of defendant Ignite through a joint venture with EVCD/MMS Wholesale, LLC ("MMS"); (d) defendant Bilzerian's covert control defendant Ignite through a joint venture with Al Khalifa

---

[2] The government has not moved to admit all public documents, admissions, or additional crimes, wrong, and other acts.  Rather, this motion focuses on the evidence it is most likely to seek to admit at trial. Should the government later seek to admit at trial any additional evidence, it will notify the defense and the Court prior to seeking to admit such evidence or eliciting any testimony regarding those additional topics from any witnesses.

Group, dba MK Vape; and (e) defendant Paul Bilzerian's covert control over International Investments through a sale of shares in another company, Exxcel Outdoors, LLC, facilitated by defendant Rohleder.

Evidence of the additional criminal conduct set forth above is plainly admissible at trial. Defendants' additional criminal conduct falls squarely within and is direct evidence of the charged offenses or, at a minimum, is inextricably intertwined with the charged offenses. But even assuming that defendant's additional acts and crimes are not part of, or inextricably intertwined with, the charged conduct, evidence of defendant's other acts is admissible under Federal Rule of Evidence 404(b), which is a "rule of inclusion, not exclusion." Indeed, this evidence is critical to proving defendants' knowledge, motive, plan, fraudulent intent, and absence of mistake, has substantial probative value, and there are no countervailing concerns that would substantially outweigh the evidence's relevance.

Third, should defendant Bilzerian testify at trial, the government moves to admit evidence of defendant's convictions for securities fraud in United States v. Bilzerian, CR 88-00962-RJW (the "SDNY Case"), in the Southern District of New York, namely, violations of 15 U.S.C. § 78j(b) and 18 U.S.C. §§ 1001 and 371, pursuant to Federal Rules of Evidence 609 and 607.

## II.    STATEMENT OF FACTS

### A.    Defendant Bilzerian Is a Convicted Felon

In September 1989, defendant Bilzerian was convicted of nine counts of securities fraud, in violation of 15 U.S.C. § 78j(b), making false statements to the SEC, in violation of 18 U.S.C. § 1001, and conspiracy to defraud the SEC and Internal Revenue Service, 18 U.S.C. § 371. United States v. Bilzerian, 926 F.2d 1285, 1289 (2d

3

Cir. 1991); United States v. Bilzerian, No. 88 CR. 962 (RJW), 1992 WL 301390, at *1 (S.D.N.Y. Sept. 2, 1992).  He was sentenced to four years in prison.  Bilzerian, 926 F.2d at 1289.

### B.    Defendant Bilzerian Is Subject to a $62 Million Disgorgement Order

Following his criminal convictions, the SEC filed a separate civil action against defendant Bilzerian in the United States District Court for the District of Columbia, Case Number 89-1854 ("DC SEC Case").  Defendant Bilzerian was found civilly liable for securities fraud and ordered to disgorge his profits.  See SEC v. Bilzerian, 29 F.3d 689, 691 (D.C. Cir. 1994).  Including accrued prejudgment interest, the SEC Judgment exceeded $62 million.  Id. Today, with interest, the SEC Judgment exceeds $180 million.

Following the issuance of the SEC Judgment, the federal district court overseeing the DC SEC Case issued several findings and orders relating to defendant Bilzerian's many attempts to dodge the SEC judgment.  Specifically, the federal district court held defendant Bilzerian in contempt based on findings that he has "purposefully sought to insulate his assets from the Court's reach," "his diligent efforts have been focused on how to avoid compliance with the Court's orders," and "defendant Bilzerian has engaged in a pattern of deception and financial maneuverings in order to shield his assets from legitimate creditors and from the accounting that the Court has undertaken, and that defendant Bilzerian continues to maintain control over considerable wealth."   See DC SEC Case, Dkts. 170, 651, and 1232.  The federal district court also found that defendant Bilzerian "enmeshed his wife, Terri Steffan, his family members, and his friends in attempts to shield and distribute assets in such a way

4

as to defeat [the SEC's] attempt to require Bilzerian to satisfy the judgment rendered against him for securities fraud." See DC SEC Case, Dkt. 560. Based in part on those findings, the federal district court incarcerated defendant Bilzerian for flouting the court's attempts to conduct an accounting of his assets and designated defendant Bilzerian as a vexatious litigant. See DC SEC Case, Dkts. 187, 388.

As the federal district court was repeatedly making findings that defendant Bilzerian was intentionally shielding his wealth from the SEC Judgment, defendant Bilzerian filed several documents under penalty of perjury to multiple courts, including the U.S. Supreme Court, claiming that he had almost no assets. See DC SEC Case, Dkt. 1223; Bilzerian v. SEC, Case No. 20-7046 (U.S. 2021) (Defendant Bilzerian's Motion for Leave to Proceed In Forma Pauperis).

**C. Defendants' Fraudulent Schemes**

As alleged in the First Superseding Indictment ("Indictment"), defendants engaged in several financial fraud schemes. (Dkt. 123.)

First, defendants engaged in a conspiracy to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the SEC with respect to collection of the SEC Judgment by deceitful and dishonest means. Specifically, defendant Bilzerian funneled millions of dollars to capitalize defendant Ignite through shell companies, including International Investments, Vulcan Enterprises, Ltd., Veritas Investments, and Rohleder Inc., which were in the names of straw owners, such as defendant Rohleder and others. Defendants and their unindicted coconspirators concealed defendant Bilzerian's control over defendant Ignite and the shell companies.

Second, defendants engaged in a conspiracy to commit wire and securities fraud (as well as committing the substantive crimes) by misleading investors with respect to defendant Ignite's vape product sales in 2020 and the nature of defendant Bilzerian's leadership and control over defendant Ignite and the shell companies, including International Investments, among other things.  (Dkt. 123.)

**III.  ARGUMENT**

  **A.    The Court Should Take Judicial Notice of Facts From Publicly Available Documents**

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Relevant here, "[f]ederal courts may take judicial notice of matters of public record, including statutes."  United States v. Lopez, 4 F.4th 706, 731 (9th Cir. 2021).  In taking judicial notice of a public document, the Court does not take judicial notice of the "truth of the information" contained in the document, but its authenticity and public availability.  United States ex rel. Hong v. Newport Sensors, Inc, 728 F. App'x 660, 661 (9th Cir. 2018).  Accordingly, "[i]n a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive."  Fed. R. Evid. 201(f).[3]

The government requests that the Court take judicial notice of the following categories of documents that are publicly available and

_____

[3] If the Court takes judicial notice of the facts discussed herein, the government will file a proposed instructions to add Ninth Circuit Model Criminal Jury Instruction No. 2.4 Judicial Notice.

whose accuracy cannot reasonably be questioned: (1) defendant Ignite's public filings with the SEC and CSA; (2) orders and findings by the federal district court overseeing the DC SEC Case; and (3) court filings by defendant Bilzerian.

           1.    Defendant Ignite's Public Filings with SEC and CSA

As a publicly traded company in the United States and Canada, defendant Ignite filed public financial disclosures with both the SEC and CSA.[4]  The Court should take judicial notice of those public disclosures and filings because the fact of those public filings are not in reasonable dispute.  See Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (SEC filings are subject to judicial notice); Northstar Fin. Advisors Inc. v. Schwab Invs., 779 F.3d 1036, 1043 (9th Cir. 2015) (noting that judicial notice of SEC filings was proper even if the filer was "aggrieved by their use" because the filer "created and filed them"); In re Silicon Graphics, Inc. Sec. Litig., 970 F. Supp. 746, 758 (N.D. Cal. 1997) (courts "may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); In re Wet Seal, Inc. Securities, 518 F. Supp. 2d 1148, 1158 (C.D. Cal. 2007) (rejecting a party's objection to CSA filings because they were filed publicly pursuant to the laws of Canada and the "documents are analogous and judicially noticeable in the same manner as the SEC

---

[4] The Canadian securities filings are available from SEDAR, the electronic filing and data access systems managed by the CSA and used by all market participants in Canada's capital markets.  See https://www.sedarplus.ca.  These filings include public press releases.

documents."). Specifically, the government seeks judicial notice of the public securities filings attached as Exhibits A through N.

2. The Federal District Court's Orders and Findings

The government also seeks judicial notice of the following federal court orders and factual findings. It is well-established law that "a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases." United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); Reyn's Pasta Bella, LLC v. VISA USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."). These orders include:

- The SEC Judgment orders. See SEC v. Bilzerian, 814 F. Supp. 116, 117 (D.D.C. 1993); SEC v. Bilzerian, No. CIV.A. 89-1854, 1993 WL 542584, at *1 (D.D.C. June 25, 1993).

- Court orders holding defendant Bilzerian in contempt based on findings that he has "purposefully sought to insulate his assets from the Court's reach," "his diligent efforts have been focused on how to avoid compliance with the Court's orders," and "defendant Bilzerian has engaged in a pattern of deception and financial maneuverings in order to shield his assets from legitimate creditors and from the accounting that the Court has undertaken, and that defendant Bilzerian continues to maintain control over considerable wealth." See DC SEC Case, Case No. 89-cv-1854 (D.D.C.), Dkts. 170, 651, 1232.

- A court order finding that defendant Paul Bilzerian has "enmeshed his wife, Terri Steffan, his family members, and his friends in attempts to shield and distribute assets in

8

such a way as to defeat [the SEC's] attempt to require Bilzerian to satisfy the judgment rendered against him for securities fraud." See id., Case No. 89-cv-1854 (D.D.C.), Dkt. 560.

- A court order incarcerating defendant Paul Bilzerian due to his refusal to comply with the district court's order relating to the SEC Judgment, namely, "any financial inability to comply was self-created because Bilzerian had separated his assets from himself and funneled them to shell companies, partnerships, and trust entities". See id., Case No. 89-cv-1854 (D.D.C.), Dkt. 187.

- Court orders prohibiting defendant Bilzerian from filing any complaint, proceeding, or motions in any Court without prior permission. See id., Case No. 89-cv-1854 (D.D.C.), Dkt. 388.

- A court order that defendant Paul Bilzerian had a financial interest in foundations directed by his wife, and those foundations' assets were frozen and turned over to the court. See SEC v. Loving Spirit Found. Inc., 392 F.3d 486, 488 (D.C. Cir. 2004).

These federal court orders are admissible to show defendant Bilzerian's ownership and concealment of assets and are therefore not hearsay. See United States v. Perry, 857 F.2d 1346, 1351–52 (9th Cir. 1988) (affirming "the admission of a bankruptcy court's determination that certain transfers of property to Perry's relatives were fraudulent conveyances" because it was admitted to show that the defendant "was the true owner of certain properties nominally owned by his relatives" and "was relevant to prove that Perry had concealed

his assets") (citation omitted); <u>United States v. Boulware</u>, 384 F.3d 794, 807 (9th Cir. 2004) (finding that a prior state court judgment's "recital of facts" identifying the correct owner of assets to be admissible as "not for the truth of the matters asserted in the judgment, but rather to establish the judgment's legal effect" and, in the alternative, admissible under Rule 803(15)).

    3.    Defendant Bilzerian's Admissions

In addition, the government moves to admit statements made by defendant Bilzerian in public filings as subject to judicial notice. <u>see Reyn's Pasta Bella</u>, 442 F.3d at 746 n.6 (courts may take judicial notice of court filings).  Specifically:

- Defendant Paul Bilzerian's representations, including about his assets in filings with the federal district court in the DC SEC Case in 2018 and the U.S. Supreme Court in 2021. <u>See</u> DC SEC Case, Case No. 89-cv-1854 (D.D.C.), Dkt. 1223; Ex. O.

- Defendant Paul Bilzerian statements in the DC SEC Case, namely, "[I]t shouldn't be a shock to anybody that I . . . have no reason, I mean, to dedicate my life to trying to earn money all of which would go to basically pay a judgment that I don't believe, with all due respect to the Court, should have been entered in the first place." <u>See</u> DC SEC Case, Case No. 89-cv-1854 (D.D.C.), Dkt. 170.

These statements are statements made by a party opponent, defendant Bilzerian, and are also co-conspirator statements.  Thus, they are not hearsay.  <u>See</u> Fed. R. Evid. 801(d)(2)(d) and (e).

**B.    404b**

The government also seeks to admit evidence at trial demonstrating that defendants engaged in additional criminal conduct and other acts falling into the five general categories described above and below.  For each category, the government has set forth: (1) the additional crimes and other acts the government seeks to admit; (2) the general nature of the evidence establishing that defendant committed the additional crimes and other acts; and (3) the admissibility of the other acts.

### 1.    Legal Standard

Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  The Ninth Circuit, however, has held that "Rule 404(b) applies solely to evidence of 'other' acts, not to evidence of the very acts charged as crimes in the indictment." United States v. Loftis, 843 F.3d 1173, 1176 (9th Cir. 2016).  When an indictment alleges a general scheme, "evidence of uncharged transactions is not evidence of 'other' crimes or acts under Rule 404(b), because it is evidence of part of the crime charged in the indictment--the overall scheme to defraud." Id. (emphasis in original).

It is also well-settled that "evidence should not be considered 'other crimes' or 'other act' evidence within the meaning of Rule 404(b) if 'the evidence concerning the "other" act and the evidence concerning the crime charged are inextricably intertwined.'" United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012) (citation omitted).  The Ninth Circuit has applied the "inextricably intertwined" doctrine in two categories of cases: (1) where the other

11

act "constitutes a part of the transaction that serves as the basis for the criminal charge," and (2) where it was necessary to admit the other act evidence "in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." Loftis, 843 F.3d at 1178 (citations omitted); see also United States v. Daly, 974 F.2d 1215, 1217 (9th Cir. 1992) ("evidence concerning other acts that are inextricably intertwined with the charged acts may be admitted" to "put [defendant's] illegal conduct into context and to rebut his [defense].").  Inextricably intertwined evidence is considered "direct evidence, used to flesh out the circumstances surrounding the crime with which the defendant has been charged, thereby allowing the jury to make sense of the testimony in its proper context." United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir. 1992) (cleaned up).

Even if the other act evidence is not part of the charged conduct and the inextricably intertwined exception does not apply, other act evidence is still admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  The test for admitting such evidence is whether: (1) it tends to prove a material fact; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the act; and (4) where knowledge and intent are at issue, the act is similar to that charged.  See United States v. Hanson, 936 F.3d 876, 882 (9th Cir. 2019).  The Ninth Circuit has repeatedly held that "Rule 404(b) 'is a rule of inclusion -- not exclusion.'" United States v. Major, 676 F.3d 803, 808 (9th Cir. 2012).

12

In addition, the Court must assess whether the evidence is more probative than prejudicial.  United States v. Beckman, 298 F.3d 788, 794 (9th Cir. 2002).  But Rule 404(b) evidence "is not rendered inadmissible because it is of a highly prejudicial nature . . . . The best evidence often is."  United States v. Parker, 549 F.2d 1217, 1222 (9th Cir. 1977); United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir. 1990) ("'[U]nfair prejudice' within the meaning of the rule occurs when the evidence has 'an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.'").  To the extent there is any concern regarding defendants being prejudiced by evidence admitted under Rule 404(b), such prejudice can be ameliorated by a limiting instruction.  See United States v. Romero, 282 F.3d 683, 688 n.1 (9th Cir. 2002).

As the Supreme Court explained in Huddleston v. United States, 485 U.S. 681 (1988), "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining the mental state is by drawing inferences from conduct."  485 U.S. at 685; United States v. Diggs, 649 F.2d 731 (9th Cir. 1981), overruled on other grounds by United States v. McConney, 782 F.2d 1195 (9th Cir. 1984) (en banc) (evidence defendant used a bank to fraudulently obtain money from other persons admissible in prosecution for mail and wire fraud); United States v. Ford, 632 F.2d 1354, 1375 (9th Cir. 1980).

### 2.    $1 Million Loan to Michael Feder

#### a.    *Conduct and Evidence*

In approximately 2019, defendant Bilzerian personally loaned Michael Feder, an executive at Ignite, approximately $1 million,

13

facilitated by defendant Rohleder and Bilzerian's shell company, Rohleder Inc., so that Feder could purchase a house in Las Vegas, Nevada.  The government expects to prove this conduct through the testimony of Feder and introduction of a limited number of emails and documents proving the transaction occurred.

b.  *Admissibility*

Defendant Bilzerian's $1 million loan to Feder, which was facilitated by defendant Rohleder and the shell company Rohleder Inc., is admissible for multiple reasons.

First, this criminal conduct falls squarely within the charged scheme to defraud the United States.  Count one of the indictment charges defendants Bilzerian and Rohleder with conspiring to defraud the United States between 2018 and 2024 by concealing defendant Bilzerian's assets in the United States in part through shell companies, including Rohleder Inc.  This conduct shows defendant Bilzerian, assisted by defendant Rohleder, deploying his wealth within the United States using Rohleder Inc.  It is therefore admissible as an "uncharged transaction" that is part of the "overall scheme to defraud."  Loftis, 843 F.3d at 1176.

Second, defendant Bilzerian's $1 million loan to Feder, facilitated by defendant Rohleder, is inextricably intertwined with the conduct charged in count one because it "flesh[es] out the circumstances surrounding the crime with which the defendant has been charged," namely, concurrent attempts by defendants to conceal defendant Bilzerian's wealth, and thereby "allowing the jury to make sense of the testimony in its proper context."  Ramirez-Jiminez, 967 F.2d at 1327.  The conduct is also admissible as inextricably intertwined to rebut defendants' anticipated defense that defendant

14

Bilzerian in fact has no assets or that they did not know defendant Bilzerian had assets.  Daly, 974 F.2d at 1217.

Third, even if not directly admissible, evidence of the 2019 loan is admissible under Rule 404(b) to demonstrate defendant's knowledge, motive, plan, absence of mistake, and lack of accident, and all four Rule 404(b) factors support admissibility.  Hanson, 936 F.3d at 882.  The conduct proves many material facts, namely, that defendant Bilzerian deployed his wealth in the United States despite claiming to be impoverished, defendant Rohleder knew about defendant Bilzerian's wealth, and defendants Bilzerian and Rohleder used a shell company, Rohleder Inc., to facilitate the transaction to conceal defendant Bilzerian's role.  The conduct occurred in 2019, which is within the time period alleged in count one.  The evidence will include a percipient witness and defendants' own statements in emails, which is sufficient to prove the conduct.  Finally, as knowledge and intent are the key issues of dispute in this case, as with most criminal fraud cases, the act is similar to that charged.  Huddleston, 485 U.S. at 685.

### 3.   42 Bio Investment

#### a.   *Conduct and Evidence*

In approximately 2022, defendant Bilzerian negotiated to invest approximately $1 million in a company, 42 Bio, which was facilitated by defendant Rohleder.  After defendants Bilzerian and Rohleder became involved and began to take charge of the company, an officer and consultant for 42 Bio, Paul Neeb, asked defendants Rohleder and Bilzerian why defendant Bilzerian was not listed on the minutes for the board meetings.  Defendant Rohleder told Neeb that it was good

practice to have less documentation about defendant Bilzerian's participation in 42 Bio, and eventually Neeb was fired.

The government expects to prove this conduct through the testimony of approximately two percipient witnesses, including Neeb, and introduction of a limited number of emails.

b.  *Admissibility*

Defendant Bilzerian's investment in 42 Bio is admissible for multiple reasons.

First, this conduct falls squarely within the charged scheme to defraud the United States (count one) because it shows defendant Bilzerian, assisted by defendant Rohleder, concealing his participation and investment of wealth in United States-based companies, such as 42 Bio.  It is therefore admissible as an "uncharged transaction" that is part of the "overall scheme to defraud."  Loftis, 843 F.3d at 1176.

Second, defendant Bilzerian's investment in 42 Bio is inextricably intertwined with and direct evidence of the conduct charged in count one because it "flesh[es] out the circumstances surrounding the crime with which the defendant has been charged," namely, concurrent attempts by defendants to conceal defendant Bilzerian's wealth.  Ramirez-Jiminez, 967 F.2d at 1327.  The conduct is also admissible as inextricably intertwined to rebut defendants' anticipated defense that defendant Bilzerian in fact has no assets or that they did not know defendant Bilzerian had assets.  Daly, 974 F.2d at 1217.

Third, even if not directly admissible, evidence of defendant Bilzerian's investment in 42 Bio is admissible under Rule 404(b) to demonstrate defendant's knowledge, motive, plan, absence of mistake,

16

and lack of accident, and all four Rule 404(b) factors support admissibility.  Hanson, 936 F.3d at 882.  The conduct proves many material facts, namely, that defendant Bilzerian deployed his wealth in the United States despite claiming to be impoverished, defendant Rohleder knew about defendant Bilzerian's wealth, and defendants Bilzerian and Rohleder affirmatively concealed defendant Bilzerian's role in investments.  The conduct occurred in 2022, which is within the time period alleged in count one.  The evidence will include a percipient witness and defendants' own statements in emails. Finally, as knowledge and intent are the key issues of dispute in this case, as with most criminal fraud cases, the act is similar to that charged.  Huddleston, 485 U.S. at 685.

### 4.    EVCD/MMS Wholesale, LLC Joint Venture

#### a.    *Conduct and Evidence*

In approximately 2019, defendant Bilzerian negotiated a deal for a joint venture between defendant Ignite and MMS, owned by Darren Schwartz, to make and distribute vaping products through a company, Ignite Distribution.  During Schwartz's negotiations with defendant Bilzerian, defendant Bilzerian told Schwartz that defendant Bilzerian made money by investing internationally from St. Kitts, and that defendant Bilzerian bought and sold companies around the world. Defendant Bilzerian also demonstrated control over defendant Ignite by offering Schwartz a seat on defendant Ignite's board of directors to smooth over a dispute between them. Eventually, Schwartz resigned from Ignite's board of directors.

The government expects to prove this conduct through testimony by Schwartz and introduction of a limited number of emails.

b. *Admissibility*

Defendant Bilzerian's control over defendant Ingnite in its joint venture with MMS is admissible for multiple reasons.

First, this conduct falls squarely within the charged scheme to defraud the United States (count one) because this conduct shows defendant Bilzerian admitting possession of investments and covertly controlling defendant Ignite, including offering defendant Ignite's board seats, despite not being listed as a beneficial owner or officer in any of defendant Ignite's public statements or filings. It is therefore admissible as an "uncharged transaction" that is part of the "overall scheme to defraud." Loftis, 843 F.3d at 1176.

Second, defendant Bilzerian's control of defendant Ignite to participate in the joint venture with MMS is inextricably intertwined with and direct evidence of the conduct charged in count one because it "flesh[es] out the circumstances surrounding the crime with which the defendant has been charged," namely, concurrent attempts by defendants to conceal defendant Bilzerian's wealth, and thereby "allowing the jury to make sense of the testimony in its proper context." Ramirez-Jiminez, 967 F.2d at 1327. The conduct is also admissible as inextricably intertwined to rebut defendants' anticipated defense that defendant Bilzerian in fact has no assets, they did not know defendant Bilzerian had assets, or that defendant Bilzerian did not control defendant Ignite. Daly, 974 F.2d at 1217.

Third, even if not directly admissible, evidence of defendant Bilzerian's control of defendant Ignite to participate in the joint venture with MMS is admissible under Rule 404(b) to demonstrate defendant's knowledge, motive, plan, absence of mistake, and lack of accident, and all four Rule 404(b) factors support admissibility.

18

Hanson, 936 F.3d at 882.  The conduct proves many material facts, namely, that defendant Bilzerian deployed his wealth in the United States despite claiming to be impoverished and that defendant Bilzerian controlled defendant Ignite.  The conduct occurred in 2019, which is within the time period alleged in count one.  The evidence will include a percipient witness and defendants' own statements in emails, which is sufficient to prove the conduct.  Finally, as knowledge and intent are the key issues of dispute in this case, as with most criminal fraud cases, the act is similar to that charged. Huddleston, 485 U.S. at 685.

### 5.    Al Khalifa Group, dba MK Vape Joint Venture

#### a.    *Conduct and Evidence*

In approximately 2020 to 2021, defendant Bilzerian negotiated a deal for a joint venture between defendant Ignite and Al Khalifa Group LLC, which was doing business as MK Vape, owned by Mohammed Khalifa, to make and distribute vaping products through a company, Ignite Distribution.  During this time, defendant Bilzerian controlled defendant Ignite's participation in this joint venture and told Khalifa that defendant Bilzerian's goal was to have defendant Ignite bought out by a big company.

The government expects to prove this conduct through the testimony of Khalifa and introduction of a limited number of emails.

#### b.    *Admissibility*

Defendant Bilzerian's control over defendant Ignite in its joint venture with MK Vape is admissible for multiple reasons.

First, this conduct falls squarely within the charged scheme to defraud the United States (count one) because this conduct shows defendant Bilzerian covertly controlling defendant Ignite and intent

19

to profit from defendant Ignite's sale.  It is therefore admissible as an "uncharged transaction" that is part of the "overall scheme to defraud."  Loftis, 843 F.3d at 1176.

Second, defendant Bilzerian's control of defendant Ignite to participate in the joint venture with MK Vape is inextricably intertwined with and direct evidence of the conduct charged in count one because it "flesh[es] out the circumstances surrounding the crime with which the defendant has been charged," namely, concurrent attempts by defendants to conceal defendant Bilzerian's wealth, and thereby "allowing the jury to make sense of the testimony in its proper context."  Ramirez-Jiminez, 967 F.2d at 1327.  The conduct is also admissible as inextricably intertwined to rebut defendants' anticipated defense that defendant Bilzerian in fact has no assets, they did not know defendant Bilzerian had assets, or that defendant Bilzerian did not control defendant Ignite.  Daly, 974 F.2d at 1217.

Third, even if not directly admissible, evidence of defendant Bilzerian's control of defendant Ignite to participate in the joint venture with MK Vape is admissible under Rule 404(b) to demonstrate defendant's knowledge, motive, plan, absence of mistake, and lack of accident, and all four Rule 404(b) factors support admissibility. Hanson, 936 F.3d at 882.  The conduct proves many material facts, namely, that defendant Bilzerian deployed his wealth in the United States despite claiming to be impoverished and that defendant Bilzerian controlled defendant Ignite.  The conduct occurred in 2020 and 2021, which is within the time period alleged in count one.  The evidence will include a percipient witness and defendants' own statements in emails, which is sufficient to prove the conduct. Finally, as knowledge and intent are the key issues of dispute in

this case, as with most criminal fraud cases, the act is similar to that charged. Huddleston, 485 U.S. at 685.

### 6. Exxel Outdoors, LLC

#### a. *Conduct and Evidence*

In 2021, defendant Bilzerian sold shares in a company, Exxcel Outdoors, LLC ("Exxcel"), facilitated by defendant Rohleder, that were owned by International Investments. In emails, defendant Bilzerian states that the profits earned from the sale of International Investment's shares of Exxel were paid to defendant Bilzerian. The government expects to prove this conduct through introduction of a limited number of emails.

#### b. *Admissibility*

Defendant Bilzerian's control over International Investments via its sale of Exxcel shares is admissible for multiple reasons.

First, this conduct falls squarely within the charged scheme to defraud the United States (count one) because it shows defendant Bilzerian's wealth and his covert control over International Investments. It is admissible as an "uncharged transaction" that is part of the "overall scheme to defraud." Loftis, 843 F.3d at 1176.

Second, defendant Bilzerian's control of International Investments in its sale of Exxcel shares is inextricably intertwined with and direct evidence of the conduct charged in count one because it "flesh[es] out the circumstances surrounding the crime with which the defendant has been charged," namely, concurrent attempts by defendants to conceal defendant Bilzerian's wealth, and thereby "allowing the jury to make sense of the testimony in its proper context." Ramirez-Jiminez, 967 F.2d at 1327. The conduct is also admissible as inextricably intertwined to rebut defendants'

anticipated defense that defendant Bilzerian in fact has no assets, they did not know defendant Bilzerian had assets, or that defendant Bilzerian did not control International Investments.  Daly, 974 F.2d at 1217.

Third, even if not directly admissible, evidence of defendant Bilzerian's control of International Investments is admissible under Rule 404(b) to demonstrate defendant's knowledge, motive, plan, absence of mistake, and lack of accident, and all four Rule 404(b) factors support admissibility.  Hanson, 936 F.3d at 882.  The conduct proves many material facts, namely, that defendant Bilzerian deployed his wealth in the United States despite claiming to be impoverished and that defendant Bilzerian controlled International Investments. The conduct occurred in 2021, which is within the time period alleged in count one.  The evidence will include defendants' own statements in emails, which is sufficient to prove the conduct.  Finally, as knowledge and intent are the key issues of dispute in this case, as with most criminal fraud cases, the act is similar to that charged. Huddleston, 485 U.S. at 685.

**C.    609**

The government will not seek to offer defendant Bilzerian's 1989 convictions for securities fraud in its case-in-chief.  Should defendant Bilzerian choose to testify, however, these convictions are admissible to impeach defendant Bilzerian's credibility.

Under Federal Rule of Evidence 609, where the testifying witness is the defendant, a prior felony conviction is admissible where the probative value outweighs the prejudicial effect to the defendant. Fed. R. Evid. 609(a)(B).  If the conviction is over ten years old or if the defendant was released from confinement over ten years ago,

the probative value must substantially outweigh the prejudicial effect.  Fed. R. Evid. 609(b).

In determining the admissibility of a prior conviction, the "trial court should consider: (1) the impeachment value of the prior crime; (2) the temporal relationship [between the prior crime and the present]; (3) the similarity between the past and the charged crime; (4) the importance of [the] testimony; and (5) the centrality of the credibility issue."  United States v. Martinez-Martinez, 369 F.3d 1076, 1088 (9th Cir. 2004).  This five-factor test applies to the analysis under both 609(a)(1) and 609(b).  Worldwide Subsidy Grp., LLC v. Fed'n Int'l de Football Ass'n, 771 F. App'x 767, 768 (9th Cir. 2019).  Under this framework, defendant Bilzerian's prior securities fraud convictions are admissible as impeachment evidence.

First, defendant Bilzerian's securities fraud convictions have high impeachment value as evidence probative on the issue of his veracity.  United States v. Bettencourt, 614 F.2d 214, 217 n.7 (9th Cir. 1980) ("Prior crimes involving deliberate and carefully premeditated intent such as fraud and forgery are far more likely to have probative value with respect to later acts than prior crimes involving a quickly and spontaneously formed intent," such as assault) (cleaned up); United States v. Gay, 967 F.2d 322, 328 (9th Cir. 1991) ("Evidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness.").  Indeed, although "[w]e are now outside the window where this conviction would be automatically admissible" under Rule 609(a)(2), it nonetheless is "precisely the sort of crime[] that the Federal Rules of Evidence consider most reflective of a witness's trustworthiness--and

23

therefore most appropriate for impeachment." United States v. Okafor, 2024 WL 4263928, at *12 (D.D.C. Sept. 23, 2024).

Second, while defendant Bilzerian's convictions are not close temporally to the charged offenses, this does not necessitate exclusion in of itself. See Zinman v. Black & Decker (U.S.), Inc., 983 F.2d 431, 434 (2d Cir. 1993) (holding that the district court properly admitted a sixteen-year-old conviction for Medicare fraud because the district court found that "making a false statement to a government agency is a crime akin to perjury" and bears "heavily on his credibility"); United States v. Herrera, No. CR 15-315 JGB, 2016 WL 11637163, at *12 (C.D. Cal. Aug. 4, 2016) (permitting introduction of nearly forty-year-old conviction for conspiracy to commit mail fraud under Rule 609(b) because "they bear a direct relationship" to "character for truthfulness").

Lastly, the third, fourth, and fifth factors of similarity, importance of defendant's testimony, and centrality of credibility -- while defendant Bilzerian's convictions are similar to the charged crimes, by testifying, a defendant "places his credibility directly at issue." United States v. Alexander, 48 F.3d 1477, 1489 (9th Cir. 1995). The government should not be "forced to sit silently by, looking at a criminal record which, if made known, would give the jury a more comprehensive view of the trustworthiness of the defendant as a witness." Id. (citation omitted).

**D.    Depending on the Content of Defendant Bilzerian's Testimony, His Prior Convictions May Be Admissible to Impeach by Contradiction Under Rule 607**

Defendant Bilzerian's prior felony convictions may also be relevant to impeach her testimony by contradiction. "[T]he concept of impeachment by contradiction permits courts to admit extrinsic

24

evidence that specific testimony is false, because contradicted by other evidence." United States v. Castillo, 181 F.3d 1129, 1132 (9th Cir. 1999). Its purpose is to prevent a witness, including a defendant, from "engag[ing] in perjury, mislead[ing] the trier of fact, and then shield[ing] himself from impeachment by asserting the collateral-fact doctrine." Id. at 1133 (citation omitted). "Impeachment by contradiction is properly considered under Rule 607, not Rule 608(b)." Castillo, 181 F.3d at 1133; United States v. Antonakeas, 255 F.3d 714, 724 (9th Cir. 2001) ("Federal Rule of Evidence 607 allows the admission of extrinsic evidence to impeach specific errors or falsehoods in a witness's testimony on direct examination." (citation omitted)).

If defendant Bilzerian takes the stand and portrays himself as a law-abiding citizen or unfamiliar with fraud, the government should be permitted to present evidence of his prior felony convictions, which squarely contradict such statements. See, e.g., Antonakeas, 255 F.3d at 724-25 (affirming admission of evidence that defendant had engaged in drug sales under Rule 607 to impeach by contradiction defendant's "sweeping statements disavowing any involvement with drugs"). Regardless of the Court's ruling on the government's motion to admit evidence of defendant Bilzerian's prior convictions under Rule 609, the Court should reserve ruling on the admissibility of those convictions under Rule 607 until the conclusion of defendant Bilzerian's direct examination.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion in limine.

25

The undersigned, counsel of record for the United States of America, certifies that this brief contains 6,507 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 24, 2025

JENNIFER L. WAIER
Attorney for the United States
Acting Under Authority Conferred by
28 U.S.C. § 515

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


                            /s/
JASON C. PANG
NISHA CHANDRAN
DAVID C. LACHMAN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA