## DECLARATION OF JASON C. PANG

I, Jason C. Pang, declare as follows:

1.      I am an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Central District of California ("Office"), and I am one of the attorneys assigned to represent the United States in *United States v. Bilzerian, et al.*, No. 2:24-cr-00569-MCS. I make this declaration in support of the United States' opposition to defendant Paul Bilzerian's motion to dismiss. Except where stated on information and belief, I make this declaration based on my personal knowledge and my review of the files and records of this Office, and if called upon I could and would testify competently to the matters set forth herein.

### The Charges and the Arrest Warrant

2.      On September 26, 2024, a grand jury in this District returned an indictment charging Bilzerian, Scott Rohleder, and Ignite International Brands, Ltd. That same day, the Court issued a warrant for Bilzerian's arrest. On September 30, 2025, the grand jury returned the operative First Superseding Indictment, and the Court issued a warrant for Bilzerian's arrest on the operative First Superseding Indictment, which remains outstanding.

### The Government's Pursuit of Bilzerian's Voluntary Return

3.      On November 7, 2024, I wrote by email to Ashwin J. Ram of Steptoe LLP, who stated that he represented Bilzerian in the parallel civil enforcement action the Securities and Exchange Commission had filed against him, and who had been corresponding with this Office regarding this case. Referring to Bilzerian's status, I wrote that "the government obtained an arrest warrant, and not a summons, for him in this case," stated my understanding that counsel had previously informed Alexander Schwab, another AUSA on this case, that Bilzerian "does not intend to surrender himself pursuant to the warrant," and asked counsel to "let us know if that position has changed." A true and correct copy of that email is attached as **Exhibit 1**. Counsel never advised me that Bilzerian's position had changed, and Bilzerian has not surrendered.

4.      On November 12, 2024, Mr. Ram responded. He stated that, "[g]iven [Steptoe's] existing SEC representation, Paul Bilzerian has authorized us to send you an email" responding to my November 7 email. While asserting that Bilzerian "wishes to face the U.S. charges head on," the response did not arrange for his surrender. It instead requested that the Government "stipulate to terms of release on his own recognizance (OR), permitting continued residence in St. Kitts, and permitting unrestricted travel both within and for entering/exiting the United States," which, the email stated, "will require the United States to provide Paul with a standard ten-year multiple entry visa." A true and correct copy of that email is attached as **Exhibit 2**.

5.      On February 14, 2025, AUSA Schwab responded to a request from Steptoe that the Government support Bilzerian's visa application and agree to his release on his own recognizance. Mr. Schwab wrote that, although the Government was "not aware of any role [the Office] play[s] in the visa process," it "would obviously welcome Paul Bilzerian returning to the United States to face the charges in this case," and that, because the Steptoe attorneys were "not his criminal counsel," it would not be appropriate to negotiate bond terms with them. A true and correct copy of that email is attached as **Exhibit 3**.

6.      Beginning in or about March 2025, Ronald D. Hedding of the Hedding Law Firm communicated with this Office on Bilzerian's behalf regarding the conditions of his appearance and release. On March 19, 2025, I sent counsel a standard financial-disclosure form to inform any determination regarding Bilzerian's release. A true and correct copy of that email is attached as **Exhibit 4**.

7.      On March 20, 2025, counsel declined to complete the form, describing it as "irrelevant," and offered a financial disclosure only on the condition that the Government first commit to Bilzerian's release on his own recognizance or a nominal bond. A true and correct copy of that email is attached as **Exhibit 5**.

8. On March 27, 2025, in part due to Bilzerian's refusal to complete the form, I responded that the Government would "not ... agree to O.R. release or a 'nominal' bond amount in advance." A true and correct copy of that email is attached as **Exhibit 6**.

9. On March 28, 2025, I further explained the Government's position, stating that "we want him present at trial—we charged him," and that Bilzerian and his counsel remained free to argue for bond if and when he appears in this case and receives his detention hearing. A true and correct copy of that email is attached as **Exhibit 7**. After March 28, 2025, Mr. Hedding did not respond further regarding Bilzerian's surrender to the arrest warrant, and this Office received no further communication seeking to arrange his voluntary return until the filings Bilzerian made in this case beginning in October 2025.

10. David Schoen represents Scott Rohleder in this case and Paul Bilzerian in a related matter in the United States District Court for the District of Columbia.  On October 29, 2025, Mr. Schoen asked the government its position on allowing Bilzerian to testify remotely as a witness at trial, and I responded in part that if Bilzerian was willing to make himself available at trial, the government would facilitate his transportation to the United States for his personal appearance at trial.  A true and correct copy of that email is attached as **Exhibit 8**.

The Government's Pursuit of Extradition

11. On or about October 9, 2024—thirteen days after the indictment was returned—AUSA Schwab contacted the Department of Justice's Office of International Affairs ("OIA"), the Department component responsible for extradition requests, regarding the extradition of Bilzerian from St. Kitts. On or about October 11, 2024, OIA advised AUSA Schwab that a request would require, among other materials, a prosecutor's affidavit, a case-agent affidavit, and the affidavit of a percipient witness, and provided a template.

12. In connection with evaluating a potential extradition request, on information and belief, Mikaela Gilbert-Lurie, another AUSA in this Office assigned to this matter,

consulted with OIA in May 2025 regarding the likelihood and timing of obtaining Bilzerian's extradition from St. Kitts. Based on those consultations, I understood that obtaining Bilzerian's extradition from St. Kitts would be unlikely to succeed and, in any event, would likely be a lengthy and contested process with uncertain prospects of success. Based on conversations between OIA and this Office, I was not aware of any instance in which the United States had successfully extradited any person from St. Kitts on fraud charges, and I understood that the United States had not obtained an extradition of any kind from St. Kitts since 2018.

13.     On or about May 22, 2025, St. Kitts enacted a new Extradition Act, Act No. 10 of 2025, which established new procedures and requirements governing extradition requests, and replaced the longstanding prior extradition statute. I became aware of the new law shortly after its enactment. Preparing a request that conformed to the new statute required the Government to assess the new law's requirements and to conform the request accordingly.

14.     Because the charging instrument submitted with an extradition request defines the offenses for which a person may be prosecuted following surrender, the Government prepared its request based on the operative charging instrument in this case. The First Superseding Indictment was returned on September 30, 2025. The following day, on October 1, 2025, I requested the samples and forms necessary to assemble the request from OIA.

15.     Between October 1, 2025, and December 18, 2025, I worked on assembling the extradition request. This required substantial work, including identifying an appropriate percipient witness to meet the requirements of newly enacted St. Kitts law and coordinating the preparation of that witness's affidavit through the witness's own counsel. On December 18, 2025, I provided a draft of the extradition package to OIA.

16.     The process of finalizing the extradition request involved several rounds of review by OIA attorneys, including the following:

    a.     On January 26, 2026, OIA provided its comments on the package.

4

b.      On February 20, 2026, I provided a revised package to OIA that addressed OIA's comments.

c.      On March 11, 2026, the OIA attorney reviewing the package completed the review and forwarded the package to a supervisor.

d.      On March 19, 2026, I provided a further revised version of the request to OIA.

e.      On March 20, 2026, I transmitted the final sworn version of the request to OIA.

17.     On information and belief, the U.S. government transmitted a request for Bilzerian's provisional arrest to the authorities of St. Kitts, and on or about March 24, 2026, Bilzerian was provisionally arrested in St. Kitts pursuant to that request. On information and belief, Bilzerian is presently contesting his extradition in the courts of St. Kitts, where he is represented by counsel.

18.     On information and belief, on or about June 17, 2026, St. Kitts separately charged Bilzerian and others relating to a fraudulent scheme in St. Kitts.

The Government's March 2026 Offer of Voluntary Return

19.     On March 18, 2026, as the extradition request was being finalized, David Lachman, another AUSA in this Office assigned to this matter, advised Bilzerian that, if he was willing to travel to the United States to be arraigned, "the government will facilitate your entry into the country without the need for obtaining a U.S. visa," identified three specific direct flights from St. Kitts on which he could travel, offered to arrange the requisite travel documents through the U.S. Embassy in Bridgetown, and asked him to state whether his willingness to travel was "conditioned on a decision on any pre-trial motions." In an email dated March 18, 2026, Bilzerian stated that "[i]f my Motion to Dismiss is granted, then there will be no need for me to travel to the United States," and that only "[i]f my Motion to Dismiss is denied and affirmed on appeal, and the trial goes forward" would he "need permission to enter the United States." A true and correct copy of those emails are attached as **Exhibit 9**.

20.    In a further email dated March 20, 2026, Bilzerian did not agree to book any of the identified flights, but instead posed a series of questions, including whether, "[a]fter I am arraigned in Los Angeles, [he] will ... be allowed to return home to St. Kitts until [his] trial." A true and correct copy of that email is attached as **Exhibit 10**.

The Government's Explanation of the Terms of Return

21.    On or about April 24, 2026, following Bilzerian's provisional arrest, the Government provided Bilzerian's counsel in St. Kitts, through OIA and the authorities of St. Kitts, a written explanation of the process that would occur if he consented to return to the United States. The Government explained, in substance, that, if Bilzerian consented to extradition, he would be paroled into the United States at an initial point of entry—rather than admitted on a visa—and then transported to Los Angeles; that he would be brought before a magistrate judge without unnecessary delay for an initial appearance, at which counsel would be appointed if he could not afford counsel and the magistrate judge would determine the conditions of his release or detention; that the Government would be willing to discuss bond conditions in advance of his appearance, including an agreed bond amount and residence at a United States location of his choosing, if he provided a complete and accurate financial disclosure under penalty of perjury; and that, because he would be paroled into the country for purposes of standing trial, the Government could not agree to conditions permitting him to travel internationally, because he would then be unable to reenter the United States. A true and correct copy of that communication is attached as **Exhibit 11**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on July 17, 2026.

_Jason C. Pang_
_____
JASON C. PANG

6